UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | **Criminal No. 20-079 (SRC)** |
| v. | : | |
| | : | |
| DENNIS GADSON, | : | OPINION |
| | : | |

**CHESLER**, District Judge

  This matter comes before the Court upon the motion filed by Defendant Dennis Gadson ("Defendant" or "Gadson") to suppress evidence of a firearm. The United States of America (the "Government") has opposed Gadson's motion. On May 27, 2021, the Court held an evidentiary hearing on the motion to suppress, during which it heard testimony from Sergeant Anthony Ricks ("Sgt. Ricks"), Latrese Moorman ("Moorman") and W.P., a juvenile. Following the hearing, the Court provided an opportunity for supplemental briefs to be submitted. The Court has considered all papers filed in connection with the motion, as well as the evidence presented at the May 27 hearing. For the reasons set forth below, the Court will deny Defendant's motion to suppress.

  Gadson has been charged in a one-count Indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Gadson had moved to suppress evidence as part of a broader omnibus pretrial motion, and had asked this Court to suppress evidence of the firearm, suspected marijuana, and a ski mask obtained in the course of the search of Defendant's person on July 26, 2019 in East Orange, New Jersey. In brief, Gadson argued that this evidence

1

was the fruit of an unlawful search. On July 23, 2020, this Court ruled on the omnibus motion, but reserved decision on Gadson's motion to suppress, and Ordered that an evidentiary hearing be held.

The primary issue before this Court is whether, at the time of the search, Sgt. Ricks lacked reasonable suspicion to stop and frisk Defendant: did the officer lawfully conduct an investigatory stop of Defendant, pursuant to the Fourth Amendment and the Supreme Court decision in Terry v. Ohio, 392 U.S. 1 (1968) and its progeny? The Fourth Amended guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. In Terry, the Supreme Court held that a police officer may conduct "a brief, warrantless, investigatory stop of an individual when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Terry, 392 U.S. at 27; see also Illinois v. Wardlaw, 528 U.S. 119, 124 (2000) (recognizing the "well-established exception to the Fourth Amendment's warrant requirement" set forth in Terry). The Supreme Court has further held reasonable suspicion depends on whether an officer had "a particularized and objective basis for suspecting the person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). Courts must determine whether reasonable suspicion exists based on the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002). This approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." Id. "[T]he Government bears the burden at a suppression hearing where, as here, the search or seizure was conducted without a warrant." United States v. Lowe, 791 F.3d 424, 436 (3d Cir. 2015).

The East Orange Police Department Incident Report alleges the following background facts. On July 26, 2019, Sgt. Ricks set up surveillance in the vicinity of 67 South Munn Avenue in East Orange and made observations of some individuals, including Defendant. Shortly thereafter, Sgt. Ricks made additional observations of Defendant's activity at 77 South Munn Avenue. Defendant walked down South Munn Avenue and met two females. Defendant and the two females walked to a gas station and convenience store at the end of the street. After Defendant and the two females exited the store, Sgt. Ricks, assisted by other officers, stopped Defendant, who held in his hand a small bag of what appeared to be a plant substance and $12 in currency. Defendant was arrested. Sgt. Ricks felt the outside of the waist pack Defendant was wearing and felt what seemed to be a handgun. Sgt. Ricks then searched the waist pack, and discovered items inside it, including a Taurus 9mm semi-automatic handgun.

At the hearing, Sgt. Ricks testified about his observations of Defendant on July 26, 2019. In brief, Sgt. Ricks stated that, while parked in front of 67 South Munn Avenue, at a distance of 20 to 25 feet from the observed individuals, he saw Defendant and other individuals exchange small objects for currency. Sgt. Ricks testified that, about 20 minutes later, a group including Defendant moved to the front of the building at 77 South Munn Avenue, and Sgt. Ricks moved his vehicle to the parking lot across the street at 74 South Munn Avenue, at a distance of roughly 40 feet from the observed individuals. Sgt. Ricks stated that he observed an individual give currency to Defendant, and Defendant gave that individual a small item. Sgt. Ricks testified that he then observed Defendant place his hand into his waist bag, as if searching for something, and the handle of what appeared to be a firearm slipped out of the waist bag, as if Defendant was searching in the waist bag under the firearm, thus lifting the firearm so that its handle was visible

3

above the bag. Sgt. Ricks stated that he called for backup assistance, and watched Defendant walk down South Munn Avenue. Sgt. Ricks said that he saw Defendant meet two young women as he walked and they walked together for a short distance; Defendant then left them and went to an Exxon gas station and convenience store, where he entered the store and then exited, roughly five minutes later. Sgt. Ricks testified that he and other officers then stopped Defendant, who was holding what appeared to be a bag of marijuana and some currency. Sgt. Ricks stated that, after Defendant was arrested, Sgt. Ricks took possession of the waist bag and, holding it in his hands, felt what he believed to be a firearm inside. Sgt. Ricks testified that he then opened the waist bag and discovered the firearm, which he recognized when it was presented to him at the hearing. Sgt. Ricks stated that he did not observe Defendant using a cellphone that day, nor would he have been allowed to do so during the arrest.

Defendant contends that Sgt. Ricks' testimony is improbable and not credible. Defendant makes three arguments to attack the credibility of Sgt. Ricks' testimony. First, Defendant attempts to raise doubt about the officer's testimony that he parked in a space in the parking lot at 74 South Munn Avenue that allowed him an unobstructed view of Defendant while Defendant stood in front of the building at 77 South Munn Avenue. Defendant points to the fact that Sgt. Ricks testified that the parking lot was empty during the day but, when confronted on cross-examination with a photograph showing cars in that parking lot during the daytime, he stated that the parking lot was not empty during the daytime. Second, and third, Defendant argues that Sgt. Ricks' testimony is contradicted by the credible testimony of Moorman and W.P.

Moorman testified that she has dated Defendant for nine years, has a three-month old child with him, and that Defendant lives with her at 67 South Munn Avenue. Moorman stated

4

that, on the afternoon in question, Defendant was absent from the apartment for only ten minutes and that, at the end of that time, he called her phone several times, and finally spoke with her to tell her that he had been arrested. Moorman identified what she stated was a screen shot of a call log from her phone carrier showing calls from a number she identified as belonging to Defendant. Moorman stated that she had visited the Defendant during his incarceration for this offense and had attended his initial appearance in Court. Moorman further testified that, although she was aware during this time that Defendant was being prosecuted, she did not offer any potentially exculpatory information until meeting with Defendant's counsel in June of 2020. Defendant contends that Moorman's testimony contradicts Sgt. Ricks' testimony about the amount of time that he observed Defendant outside the apartment.

W.P., a 17-year old who is Defendant's niece, testified that she also lives on South Munn Avenue, and that she had called Defendant on the day in question and had asked to borrow money for lunch. W.P. stated that she and another of his nieces met Defendant at the gas station, received some money, and she accompanied Defendant during his visit to the convenience store. She testified that, after she exited the store, she watched the arrest of Defendant and, while she said that he saw him wearing a waist bag, and saw the police take possession of the waist bag, she did not observe the recovery of any firearm from the bag. Defendant contends that this contradicts the testimony from Sgt. Ricks that he saw Defendant and the two young women part ways before he entered the convenience store.

In short, Defendant argues that this Court should find the testimony of Moorman and W.P. to be credible and that of Sgt. Ricks to be not credible. The Government takes the opposite position. This Court finds that Moorman's testimony is not credible, based on the following

5

considerations. Defendant is Moorman's long-time boyfriend and the father of their infant child; she has a motive to give testimony which protects him. Although Moorman knew that Defendant was arrested in July of 2019, she did not offer her potentially exculpatory testimony until June of 2020, when she met with Defendant's counsel. Moorman did not report any objective indicators of the length of time Defendant was away from the apartment. The Court concludes that her testimony that Defendant was away from the apartment for only ten minutes is not credible and deserves little weight.

This Court also finds that W.P.'s testimony deserves little weight. The Court did not find her testimony credible because she testified that, although she observed the officer take possession of Defendant's waist pack during the arrest, she did not see the recovery of a firearm from the waist pack. There is no dispute that the police recovered a firearm from the waist pack during the arrest, and her testimony that she saw no firearm indicates that she is not a trustworthy witness. Even if this Court found W.P. to be a credible witness – which it does not – she did not claim to have any knowledge of Defendant's activities prior to meeting him shortly before going to the convenience store. Defendant offers her testimony for the sole purpose of impeaching the credibility of Sgt. Ricks' testimony that he saw W.P. part ways from Defendant before entering the convenience store. The Court finds that W.P.'s testimony does not impeach the credibility of Sgt. Ricks.

This Court found the testimony of Sgt. Ricks to be highly credible. Sgt. Ricks gave a precise, detailed account of his observations of Defendant, free of overstatement and unwarranted inferences. The testimony of Sgt. Ricks was both internally consistent as well as consistent with the photographs in evidence showing the locations of every step in his account.

At the evidentiary hearing, Sgt. Ricks demonstrated the distance at which he had seen the firearm using the actual weapon, which was both consistent with his testimony and believable. The demeanor of Sgt. Ricks while testifying was careful and credible.

This Court finds that the testimony of Sgt. Ricks was credible, while the testimony of Moorman and W.P. was not credible. Sgt. Ricks has 17 years of experience in law enforcement, 16 of which were spent working in narcotics. On the afternoon of July 26, 2019, he observed Defendant engage in exchanges of small items for currency, and he observed the handle of a firearm protruding from Defendant's waist pack. When he and the other officers encountered Defendant at the Exxon station, Defendant held in his hand what appeared to be a bag of plant substance, suspected to be marijuana, and Defendant was wearing the waist pack. Given his years of experience as a police officer working on narcotics crimes, and the observations of Defendant he had made that day, Sgt. Ricks testified that he suspected that Defendant was engaged in criminal narcotics transactions. This Court finds that Sgt. Ricks had "a particularized and objective basis for suspecting the person stopped of criminal activity." Cortez, 449 U.S. at 417-18.

This Court concludes that the Government has met its burden of proof that the officers had a reasonable, articulable suspicion that criminal activity was afoot when they stopped Defendant and searched Defendant's waist pack. The investigatory stop and search did not violate Defendant's Fourth Amendment rights. The firearm recovered in the course of this lawful investigatory stop was not unlawfully seized and will not, therefore, be excluded from

evidence. Defendant's motion to suppress will be denied.

                                                 s/ Stanley R. Chesler
                                         STANLEY R. CHESLER
                                       United States District Judge

Dated: June 23, 2021